1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| 9  GABRIEL H. S. BALDWIN, | CASE NO.  1:11-cv-00354-GBC (PC) |
| 10                    Plaintiff, | |
| 11        v. | ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM |
| 12  M. SANTILLAN, | |
| 13                    Defendants. | (Doc. 10) |
| 14 | |
| 15  _____/ | |

16

## I.    Procedural History

17
18
19        Gabriel H. S. Baldwin ("Plaintiff") is a state prisoner proceeding pro se and in forma
20 pauperis, in this civil rights action pursuant to 42 U.S.C. § 1983.  On March 2, 2011, Plaintiff filed
his original complaint which initiated this action.  Doc. 1.  On September 24, 2012, the Court
21 dismissed the complaint with leave to amend.  Doc. 9. On October 29, 2012, Plaintiff filed the first
22 amended complaint which is currently before the Court.  Doc. 10.

## II.    Screening Requirement

23
24        The Court is required to screen complaints brought by prisoners seeking relief against a
25 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
26 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
27 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
28

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  In determining whether to dismiss an action, the Court must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

**III.    Plaintiff's Complaint**

Plaintiff is currently a state prisoner at the R. J. Donovan Correctional Facility (RJD) in San Diego California.  The events central to Plaintiff's complaint occurred while he was at prisoner at Kern Valley State Prison (KVSP) in Delano California.  Doc. 1; Doc. 10.  In the complaint, Plaintiff names the following defendants: 1) Renee Steadman (Correctional Officer at KVSP); 2) B. Aguinaldo (Correctional Officer at KVSP); 3) P. Truitt (Correctional Officer at KVSP); 4) M. Betzinger (Sergeant at KVSP); 5) R. Barrett (Sergeant at KVSP); 6) M. Hilderbrand (Sergeant at KVSP); 7) R. Speidell (Lieutenant at KVSP); 8) M. Jefferys (Lieutenant at KVSP); 9) X. Cano (Captain at KVSP); and 10) R. Grissom (Associate Warden at KVSP).  Doc. 10 at 2-3.  Plaintiff seeks monetary damages and injunctive relief.  Doc. 10 at 3.

Plaintiff alleges that the officers took Plaintiff's personal property and destroyed part of his property.  Doc. 10 at 3. The officers sent the remaining property out of the institution against institutional guidelines, maliciously and in retaliation because the officers believed that Plaintiff was the inmate who stole the quarterly package from the program office.  Doc. 10 at 3.  After these officers received confidential information that Plaintiff was responsible for stealing the package, Plaintiff was placed in administrative segregation for five month for an "E" offense rules violation.

2

Doc. 10 at 3.  Plaintiff's Court transcripts from Plaintiff's criminal case were mailed out which hinders his ability to argue his criminal case.  Doc. 10 at 3.

On January 13th, 2010, Defendants Aguinaldo, Truitt and Steadman took Plaintiff's typewriter, radio, C.D. Player, clippers, Eight typewriter ribbons, head phones, extension cord, adapter, watch, new running shoes, ten jars of coffee, twenty bags of refried beans, 150 dried soup packs, and ten tortillas. Doc. 10 at 4. Then Defendant Aguinaldo tore-up the obituaries of Plaintiff's parents. Doc. 10 at 4. While addressing the entire building, Defendant Aguinaldo said, "This is what happen's when you steal from us! Fuck this [piece] of Shit! If [you're] missing a package, this piece of shit stole it." Doc. 10 at 4.  Then Defendant Aguinaldo dropped Plaintiff's typewriter and radio on the floor.  Doc. 10 at 4.

According to Plaintiff, Officers Johnson and Croxton took Plaintiff's remaining property and inventoried the property on a 1083 form, then boxed up the property in seven boxes.  Doc. 10 at 4. Plaintiff's property was then taken to the program office.  Doc. 10 at 4.  While Plaintiff was waiting to be taken to Administrative Segregation, Defendant Aguinaldo trashed Plaintiff's cell and took all of Plaintiff's property.  Doc. 10 at 4.  Plaintiff immediately spoke to Defendants Barrett and Betzinger.  Doc. 10 at 4.

Plaintiff alleges that Defendant Steadman deliberately disobeyed Defendant Grissoms' order, by allowing inmates to handle "Quarterly Packages." Doc. 10 at 5.  Five months prior to the mail theft that Plaintiff was accused of eight inmates went to administrative segregation as punishment for stealing the quarterly packages and officers were reprimanded for allowing inmates to pass out other inmate's property. Doc. 10 at 5. Defendant Grissom told Defendants Barrett, Betzinger, Truitt, and Steadman that inmates were not allowed in the package room. Doc. 10 at 5.  Defendant Truitt allowed Inmate Padilla to write the inmate new address on the package, against Defendant Grissom's order. Doc. 10 at 6.  Plaintiff argues that since Defendant Barrett allowed subordinate officers to disregard Defendant Grissom's orders Defendant Barrett is "directly responsible" for his subordinate officer's actions, the missing packages and for Plaintiff's property and safety.  Doc. 10 at 7.

When Plaintiff asked Defendants Barrett and Betzinger about his property they said it would be kept as evidence in the staff restroom inside of the program office. Doc. 10 at 7.  According to

Plaintiff, Defendants Barrett and Betzinger never followed up on Plaintiff's property as they said they would. Doc. 10 at 8. Plaintiff argues that Defendants Barrett and Betzinger are responsible for sending Plaintiff to administrative segregation for a "Division 'E' Offense" which is an offense that does not mandate administrative segregation as a punishment. Doc. 10 at 8. Plaintiff also asserts that Defendants Barrett and Betzinger failed to answer Plaintiff's form 602 appeals which resulted in Plaintiff not having his property returned. Doc. 10 at 8.

Defendant Speidell told Defendant Jefferys that Plaintiff had abused their trust by stealing a package and told Defendant Jefferys to send Plaintiff's property home to "teach his ass about stealing." Doc. 10 at 9. Defendant Jefferys then told Defendant Hilderbrand that all my property was to be re-inventoried by Defendant Santillan, and if Plaintiff had money in his trust account, the property could be sent home and if Plaintiff did not have money, then "trash it." Doc. 10 at 10. When Plaintiff told Defendant Hilderbrand that it was illegal to send his trial transcripts home while Plaintiff was currently engaged in court proceedings, Defendant Hilderbrand responded, "Shut-up, thief, you should of thought about that before you stole that package." Doc. 10 at 11.

Defendant Santillan told Plaintiff that he had to send his property home, including all of Plaintiff's legal material. Doc. 10 at 12. Plaintiff told defendant Santillan that pursuant to CDCR rules and regulations, Plaintiff is allowed to keep his legal papers for an active case. Doc. 10 at 12. Defendant Santillan made a second form 1083 inventory sheet for the three boxes of legal papers and Plaintiff refused to sign the initial form which stated that the excess legal material would be "stored in R&R." Doc. 10 at 12. Defendant Santillan did not allow Plaintiff the opportunity to select the legal property that he needed. Doc. 10 at 12. Rather, Defendant Santillan went through the boxes, "throwing stuff in the trash cans, she felt like [Plaintiff] should not have. All which is allowable inmate property, which [Plaintiff] purchased . . . ." Doc. 10 at 12. When Plaintiff asked Defendant Santillan why she doing this, Defendant Santillan responded, "What's the matter, you don't like it when someone takes your stuff?" Doc. 10 at 12. Then said that if Plaintiff has money his property would be mailed to his house. Doc. 10 at 12.

According to Plaintiff, Defendant Cano is responsible for the Facility C program office, subordinate officers and responsible for every inmate's property and safety. Doc. 10 at 13.

1  Defendant Cano had knowledge of inmates being inside of the package room and he supervised the

2  subordinate defendants.  Doc. 10 at 13.  Plaintiff alleges that Defendant Cano did not answer the

3  CDC 602 Appeal sent to him and argues that this was done intentionally to deny Plaintiff access to

4  his property.  Doc. 10 at 13.  Plaintiff asserts that Defendant Grissom, in the capacity of warden was

5  responsible to ensure that inmate mail theft would not re-occur.  Plaintiff also argues that Defendant

6  Grissom intentionally failed to answer Plaintiff's grievance which indirectly resulted in Plaintiff not

7  having his property returned to him.  Doc. 10 at 14.

8  **IV.    Legal Standards and Analysis**

9       **A.    Due Process**

10       The Due Process Clause protects prisoners from being deprived of property without due

11  process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected

12  interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  However,

13  while an authorized, intentional deprivation of property is actionable under the Due Process Clause,

14  *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455

15  U.S. 422, 435-36 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor

16  unauthorized intentional deprivations of property by a state employee "constitute a violation of the

17  procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

18  postdeprivation remedy for the loss is available," *Hudson*, 468 U.S. at 533. California provides such

19  a remedy.  *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam).

20       Only an authorized, intentional deprivation of property is actionable under the Due Process

21  Clause.  *Hudson*, 468 U.S. at 533.  An authorized deprivation is one carried out pursuant to

22  established state procedures, regulations, or statutes.  *See Logan*, 455 U.S. at 436; *see also Knudson*

23  *v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).  Authorized deprivations of property are

24  permissible if carried out pursuant to a regulation that is reasonably related to a legitimate

25  penological interest.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  "An unauthorized intentional

26  deprivation of property by a state employee does not constitute a violation of the procedural

27  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

28  post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.  Thus, where the state

provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. *Hudson*, 468 U.S. at 533.

### 1.    Analysis

Plaintiff alleges that Defendants intentionally confiscated and destroyed some of his property in a manner that was contrary to the prison policies and regulations. Plaintiff's allegations of wrongful, retaliatory confiscation of his personal property does not support a due process claim. Unauthorized, bad-faith behavior does not support a federal due process claim. *Hudson*, 468 U.S. at 533. Plaintiff fails to state a § 1983 claim for deprivation of his property. Plaintiff alleges an unauthorized intentional or negligent deprivation of his property by a state employee. This is not a violation of the Due Process Clause of the Fourteenth Amendment because California provides a meaningful post-deprivation remedy for the loss. *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816-17.

### B.    Access to Courts

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with Plaintiff's right to litigate. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Phillips v. Hust* , 588 F.3d 652, 655 (9th Cir. 2009). Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative assistance, and those involving inmate's right to litigate without *active interference*. *Silva*, 658 F.3d at 1102 (emphasis added). The right to *assistance* is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354 (emphasis added).

Prisoners have the right to pursue claims without active interference that have a reasonable basis in law or fact. *Silva*, 658 F.3d at 1103-04 ((finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference). Mere inconvenience to Plaintiff resulting from lost, misplaced, or confiscated legal documents will not suffice to support a constitutional claim. *Id.* at 1103-04. Inmates do not have the right to a law library or legal assistance. *Lewis*, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. *Id.* Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual

1   injury by establishing that his prison's law library or legal assistance program is sub-par in some

2   theoretical sense." *Id.*

3         Defendants' actions must have been the proximate cause of actual prejudice to Plaintiff.

4   *Silva*, 658 F.3d at 1103-04. To state a viable claim for relief, Plaintiff must show that he suffered an

5   actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut

6   out of court. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*,

7   518 U.S. at 348, 351); *Christopher v. Harbury,* 536 U.S. 403, 415 (2002); *Phillips*, 588 F.3d at 655.

8         **1.     Analysis**

9         Plaintiff alleges that after he told Defendant Hilderbrand that it was illegal to send his trial

10   transcripts home while Plaintiff was currently engaged in court proceedings, Defendant Hilderbrand

11   responded, "Shut-up, thief, you should of thought about that before you stole that package." Doc.

12   10 at 11.  Plaintiff also alleges that Defendant Santillan did not allow Plaintiff the opportunity to

13   select the legal property that he needed.  Doc. 10 at 12.  Rather, Defendant Santillan went through

14   the boxes, "throwing stuff in the trash cans, she felt like [Plaintiff] should not have. All which is

15   allowable inmate property, which [Plaintiff] purchased . . . ." Doc. 10 at 12.  When Plaintiff asked

16   Defendant Santillan why she doing this, Defendant Santillan responded, "What's the matter, you

17   don't like it when someone takes your stuff?"  Doc. 10 at 12.  Then said that if Plaintiff has money

18   his property would be mailed to his house.  Doc. 10 at 12.

19         Plaintiff fails to allege facts sufficient to demonstrate that Defendants' actions must have

20   been the proximate cause of actual prejudice to Plaintiff.  *Silva*, 658 F.3d at 1103-04. To state a

21   viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual

22   prejudice to contemplated or existing litigation" by being shut out of court.  *Nevada Dep't of Corr.*

23   *v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 348, 351); *Christopher*

24   *v. Harbury,* 536 U.S. 403, 415 (2002); *Phillips*, 588 F.3d at 655; *see also Stokes v. Gehr*, 399 Fed.

25   Appx. 697 (3d Cir. 2010) (unpublished) (finding that state prison inmate failed to allege underlying

26   actual injury as required to support § 1983 claim alleging that prison guards and supervisors impeded

27   inmate's access to the courts when they failed to return confiscated trial transcripts).

28

**V.      Conclusions and Order**

The Court finds that Plaintiff's first amended complaint filed on October 29, 2012, fails to state any Section 1983 claims upon which relief may be granted against the named defendant.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."  In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).  However, in this action, Plaintiff filed two complaints and received substantial guidance from the Court in its initial screening order.  Doc. 9.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore orders that further leave to amend not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, the Court HEREBY ORDERS that this action be DISMISSED in its entirety, WITH PREJUDICE, for failure to state a claim upon which relief may be granted.


IT IS SO ORDERED.

Dated:    December 26, 2012

UNITED STATES MAGISTRATE JUDGE